IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

TAMRA E. GIBSON,

          Plaintiff,

    vs.                          **Case No. 06-4106-RDR**

JO ANNE B. BARNHART,
Commissioner of Social
Security,
          Defendant.

_____

## MEMORANDUM AND ORDER

Plaintiff has filed applications for social security disability income benefits and supplemental security income benefits. Plaintiff's application for disability income benefits alleges an onset date of disability of March 8, 2002. Plaintiff's application for supplemental security income benefits was filed on December 15, 2004. On May 9, 2006, a hearing was conducted upon these applications. The administrative law judge (ALJ) considered the evidence and decided that plaintiff was not qualified to receive benefits on either application. That decision was adopted by defendant. This case is now before the court upon plaintiff's motion to review the decision to deny plaintiff's applications for benefits.

STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he is "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E). This means proving that the claimant is unable "to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A). But, disability benefits can only be awarded to claimants who can show that they were disabled prior to the last insured date. §§ 423(a)(1)(A) & 423(c).

For SSI claims, a claimant becomes eligible in the first month where he is both disabled and has an SSI application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).

THE ALJ'S DECISION

The following findings are contained in the ALJ's decision. The ALJ found that plaintiff had a mild stroke (cerebrovascular accident) in 2002 which left her with a loss of feeling in the fingers of her right hand, such that she is unable to use a computer or do any typing. Plaintiff has coronary artery disease for which she has had angioplasty and stenting in March 2006. She

2

has mild degenerative joint disease in the left ankle with a history of swelling which did not last 12 months.  She has hypertension which is stable with medications.  Plaintiff is obese and has a history of drug abuse.  She smokes.  She also suffers from anxiety and depression.

The ALJ concluded that these conditions in combination were "severe" within the meaning of the relevant regulations, but they were not considered to meet or equal the requirements of any impairment set forth in the regulations' Listing of Impairments.

The ALJ found that plaintiff had periodically engaged in substantial gainful activity to mid-2004.  He determined that plaintiff retains the residual functional capacity (RFC) for light or sedentary work within specific limitations and that plaintiff has at all times been capable of performing her past relevant work as a light, unskilled housekeeper.  He concluded that plaintiff's testimony as to the severity of her impairments was not credible.

The ALJ gave substantial weight to the opinion of a reviewing State agency psychologist who indicated that plaintiff was not mentally disabled.  (Tr. 20 and Exhibits 8F and 9F).  The ALJ also gave substantial weight to an examining physician who concluded: that plaintiff had an unlimited ability for sitting, hearing, speaking and traveling; that plaintiff's ability to handle objects with her right hand would be limited; that plaintiff could stand and walk for up to one hour, or for six hours daily with

appropriate rest breaks; that plaintiff could lift up to 25 pounds occasionally and 10 pounds frequently.  (Tr. 21 and Exhibit 7F).

The record shows that plaintiff was born in 1958.  She has a GED.

PLAINTIFF'S ARGUMENTS

Right hand

Plaintiff first argues that the ALJ unduly minimized the problems plaintiff suffers with her right hand as a result of her stroke.  Plaintiff asserts that the ALJ incorrectly limited the problems to "numb fingertips" and inaccurately stated that there were no residual effects from plaintiff's stroke.  We disagree with this position.  While the ALJ may have paraphrased plaintiff's testimony that after her stroke she "got everything back" but her right fingertips (Compare Tr. 362 and 21), it is clear from his decision that he believed that plaintiff was limited in her fine motor skills in the aftermath of the stroke.  In another part of his decision, the ALJ stated that plaintiff was limited to "no fine motor requirements" due to the loss of sensation in her right fingertips.  (Tr. 21).  This is supported by the doctor's examination at Exhibit 7F.  (Tr. 250).

When plaintiff was released from doctor's care after her stroke, there were no restrictions placed on her activity.  (Tr. 129).  In the years following, plaintiff performed some home health care services.  (Tr. 359).  She has also done her own household

4

chores.  (Tr. 269).  While plaintiff has testified that she has had trouble, for instance, with cooking, grasping objects with her right hand, and performing some of the tasks required in her home health care job, looking at the record as a whole we do not believe the ALJ ignored substantial evidence regarding the limitations plaintiff has in the use of her right hand.  We further find that the ALJ's assessment of plaintiff's physical abilities was supported by substantial evidence.

Ankle

Plaintiff asserts that the ALJ understated the extent of plaintiff's ankle problems because he stated that plaintiff's history of ankle swelling did not last 12 months and was not a severe impairment.  Plaintiff has two types of ankle problems, swelling and arthritis.  The ALJ noted both of the problems in his decision and placed limits on plaintiff's capacity to stand and walk.  Although the medical records demonstrate that plaintiff has had problems with ankle pain and swelling, the extent of these problems, particularly swelling, is difficult to determine.  During the hearing before the ALJ, plaintiff was asked, "Do you have any difficulty with . . . one or both your ankles?" and plaintiff did not mention swelling.  (Tr. 267).  The medical records refer to ankle swelling in 2002, 2005 and 2006.  (Tr. 213, 249-50, 276, 302, 338).  In January of 2006, the reference to ankle swelling also states that it is "almost gone."  The other records do not reveal

5

the severity and duration of the problem.

The ALJ appeared to give substantial weight to a physical examination which limited plaintiff's capacity to stand and walk. Exhibit 7F. Upon our review of the record, we believe that substantial evidence supports the ALJ's evaluation of plaintiff's ability to stand and walk as it is affected by her ankle problems.

Ability to work as a housekeeper

Plaintiff contests the ALJ's statement that "at all times pertinent herein claimant has been capable of performing her past relevant work as a light, unskilled housekeeper . . .." (Tr. 21). Plaintiff contends that a person with limited use of her right hand and a limited ability to walk and stand could not work an eight-hour day as a housekeeper. Assuming this is correct, there are other positions which plaintiff had the RFC to perform in the opinion of the vocational expert who testified in this matter. The ALJ made this point in his decision when he stated:

> "[A]ssuming claimant was incapable of performing any of her past relevant work and assuming further that the burden shifted to the Commissioner, based on hypothetical questioning duplicating claimant's credible situation as exactly as possible and fully setting forth the limitations noted above, claimant was also capable of performing other work including duplicating machine operator, microfilm scanner, office helper and surveillance systems monitor. These were all unskilled jobs and the vocational expert identified thousands of such jobs that exist in the economy."

(Tr. 21).

In the reply brief in this case, plaintiff asserts that the

ALJ improperly concluded that plaintiff could meet the physical requirements for "light work" in a substantial gainful manner, particularly the walking and standing requirements for "light work." See 20 C.F.R. § 404.1567(b). The ALJ specifically found that plaintiff could perform her past relevant work as a "light, unskilled housekeeper" and that she "retained the residual functional capacity for a range of light and sedentary work <u>with the specific limitations set forth hypothetically at the time of her hearing</u>." (Tr. 23) (emphasis added). Plaintiff asserts that this conflicts with plaintiff's testimony that she could not walk or stand continuously for two hours at a time. (Tr. 367-68, 375). We note that the hypothetical of the ALJ did not mention standing or walking limitations (Tr. 377-78), but that the vocational expert did listen to plaintiff's testimony and reviewed plaintiff's file prior to his own testimony. (Tr. 377).

We do not believe the ALJ's decision is contingent upon plaintiff's ability to perform a wide range of light work or even her past employment as a housekeeper. The vocational expert listed sedentary jobs which plaintiff could perform, namely office helper and surveillance systems monitor. (Tr. 378-79). This alternative grounds for holding that plaintiff is not disabled provides a sufficient reason to reject plaintiff's argument. See <u>Murrell v. Shalala</u>, 43 F.3d 1388, 1389 (10th Cir. 1994)(approving alternative determinations in the social security review process); see

generally, <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1145 (10th Cir. 2004)
(recognizing that harmless error analysis applies to review in
social security cases).

<u>Special technique</u>

Plaintiff's next argument is that the ALJ did not properly
consider the effect of plaintiff's borderline personality disorder
in making the disability determination.  Specifically, plaintiff
contends that "despite the extensive evidence of mental illness in
this case, [the ALJ] did not utilize the 'special technique'
described in 20 C.F.R. [§] 404.1520a."  Doc. No. 8 at p. 8.
Defendant agrees that "it does not appear that the ALJ explicitly
followed the special technique for evaluating whether Plaintiff's
mental impairments were severe."  Doc. No. 11 at p. 7.  But,
defendant contends that this is not reversible error because the
ALJ found that plaintiff's anxiety and depression were severe
impairments and because the ALJ considered the Psychiatric Review
Technique Form done by a state agency psychologist.

Defendant further rejoins that plaintiff has been diagnosed
with a bipolar disorder, not a borderline personality disorder, and
that the evidence does not demonstrate that plaintiff's mental
illness disqualifies her from substantial gainful employment.
Defendant notes that the administrative record indicates in
numerous places that plaintiff's depression was stable with
medication; that plaintiff has worked even though she has stated

8

that she has suffered from some of the same alleged symptoms of mental illness since she was a teenager; and that the ALJ's questions to the vocational expert included work limitations to accommodate plaintiff's mental impairments.

The "special technique" described in § 404.1520a involves: 1) evaluating pertinent symptoms, signs and laboratory findings to determine whether there is a medically determinable mental impairment; 2) specifying and documenting the symptoms, signs and findings which support a finding of a medically determinable mental impairment; and 3) rating the degree of functional limitation resulting from the impairment after considering such factors as chronic mental disorders, structured settings, medication, and other treatment. The rating of the degree of functional limitation is broken down into four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. The rating should be based upon the extent to which the mental impairment interferes with the ability to function independently, appropriately, effectively and on a sustained basis. So, the quality and level of overall functioning, episodic limitations, the amount of assistance and supervision required and the settings needed for functioning are considered.

The technique is used to help determine whether the mental impairment is "severe." A "severe" impairment is then evaluated to

9

decide whether it meets or is equivalent in severity to a listed mental disorder. If it is not determined to be so severe as to qualify as a listed mental disorder, then an assessment is made of the RFC or residual functional capacity.

The application of the "special technique" is documented with the completion of a psychiatric review technique form. The ALJ must incorporate the pertinent findings and conclusions based on the technique, and his decision must show the significant history and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment. The decision must include a specific finding as to the degree of limitation in activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.

A psychiatric review technique form was completed by Dr. Keith Allen in this case. Exhibit 8F. The form showed that plaintiff has depression and a substance addiction disorder. It states that plaintiff has a "mild" degree of limitation in her activities of daily living and maintenance of social functioning. (Tr. 263). It states that plaintiff has a "moderate" degree of limitation in maintaining concentration, persistence or pace. (Tr. 263). It concludes there is insufficient evidence of any episodes of decompensation. (Tr. 263). Dr. Allen also evaluated plaintiff's understanding and memory, her concentration and persistence, her social interaction, and her ability to adapt. (Tr. 267-68). There

10

were 20 subcategories under these headings. Dr. Allen indicated that plaintiff was not significantly limited in 17 of the 20 subcategories. He found "moderate" limitations in plaintiff's ability to carry out detailed instructions, her ability to interact appropriately with the general public, and her ability to respond appropriately to changes in the work setting. (Tr. 267-68).

The ALJ stated in his decision that: "Outpatient treatment records identify claimant's mental dysfunction as basically mild, and claimant has testified that Lexapro and Xanax essentially control her mental health symptoms." (Tr. 21). He also concluded: "[Plaintiff] cannot work with the public and is restricted to simple, repetitive unskilled work mentally due to moderate deficiencies of concentration, persistence or pace and moderate social dysfunction secondary to her bipolar disorder with features of depression and anxiety." (Tr. 21). When the ALJ questioned the vocational expert, he asked the expert to assume that plaintiff "would not be working with the general public and would be limited to simple, repetitive, unskilled work." (Tr. 378).

The court finds that the ALJ incorporated the findings of Dr. Allen as reflected in the Psychiatric Review Technique form in his decisionmaking process. The form includes a consideration of the functional areas mentioned in § 404.1520a, and the ALJ explicitly mentioned "moderate deficiencies of concentration, persistence or pace" and "moderate social dysfunction." (Tr. 21). There is no

evidence or claim of episodes of decompensation.   Further, we believe it is clear that the ALJ considered plaintiff's activities of daily living and the evaluation made in that area by Dr. Allen. Dr. Allen's report states:

> "[Plaintiff] reports being homeless and staying wherever she can, and having difficulty following spoken instructions; however reports she baby sits for 4 year old granddaughter (taking care of their personal hygiene, feeding them) and for nephews, is able to prepare meals daily, performs routine household chores, is able to get out of the home alone, shops, reads 'a lot' and plays board games, attends church.   Based on the above, [plaintiff] may have difficulty with more demanding activities at times, but appears capable of understanding and performing less demanding tasks as physically able, with continued abstinence and treatment compliance."

(Tr. 269).

We also believe it is evident from the record that the ALJ considered plaintiff's testimony, her medical records, and any clinical findings, signs or symptoms described therein.   The limitations he drew from this evidence were included in his questioning of the vocational expert.

On this basis, we conclude that the ALJ did not deviate materially from the requirements of § 404.1520a.   See Nixon v. Barnhart, 49 Fed.Appx. 254 (10th Cir. 2002).

Salazar v. Barnhart

Plaintiff cites Salazar v. Barnhart, 180 Fed.Appx. 39, 2006 WL 2424786 (10th Cir. 2006) in support of her claim that the ALJ improperly failed to consider the role that plaintiff's mental illness played in causing plaintiff to be "in and out of the

workforce." We reject this assertion. While in <u>Salazar</u> the ALJ improperly minimized substantial evidence of a claimant's borderline personality disorder and its role in "substance abuse, suicidal conduct, and self-mutilation," the ALJ in the instant case did not minimize the evidence in the record of plaintiff's depression, anxiety and bipolar disorder. The court will not dispute that plaintiff's mental condition may have played a role in her spotty work history. But, the key evidence in the record is that medication can control plaintiff's mental condition, and that plaintiff has been able to work at jobs with the challenges of her mental illness. See <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1174 (10th Cir. 2005) (ALJ may reject opinion of doctors, including a treating psychologist, regarding limitations or restrictions on activities in light of evidence that claimant shows improvement and stabilization on medications). In sum, the record supports a finding that with proper medication plaintiff retains the residual functional mental and physical capacity to perform substantial gainful employment.

        <u>Credibility</u>

        Finally, plaintiff challenges the credibility analysis of the ALJ. In looking at this attack, we are mindful that "[c]redibility determinations are peculiarly within the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1254

13

(10th Cir. 2002).  We must examine the factual findings underlying the credibility determination to make sure that it is "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Hackett, 395 F.3d at 1173 (internal quotation omitted).

The court agrees with plaintiff that there are various "Luna" factors which support plaintiff's claims.  But, there are other factors which support the ALJ's determination.  These include the spotty work history (Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1274 (D.Kan. 2004)); evidence of employment during the period of alleged disability (Bates v. Barnhart, 222 F.Supp.2d 1252, 1260 (D.Kan. 2002)); noncompliance with medication regimens (Wiley v. Chater, 967 F.Supp. 446, 451 (D.Kan. 1997)); and plaintiff's activities of daily living (Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)). The medical record and the objective evidence relating to plaintiff's claims are also factors to consider when assessing credibility.  See Luna v. Bowen, 834 F.2d 161, 163-64 (10th Cir. 1987).

Upon our review of the record, we find that substantial evidence supports the credibility determination of the ALJ.

CONCLUSION

For the above-stated reasons, the court affirms defendant's decision to deny plaintiff's applications for disability income benefits and supplemental security income benefits.

14

**IT IS SO ORDERED.**

Dated this 8th day of February, 2007 at Topeka, Kansas.


s/Richard D. Rogers
United States District Judge